IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

I, Brett A. Willyerd, United States Postal Inspector, do hereby swear and affirm the following facts as being true to the best of my knowledge, information, and belief:

1. I am a United States Postal Inspector, assigned to investigate the unlawful transportation of contraband, including Title 21 controlled substances, through the United States Mail. I have been a Postal Inspector since April 2012. As part of my duties, I investigate incidents where the United States mail system is used for the purpose of transporting non-mailable matter, including controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) Possession with Intent to Distribute a controlled Substance and 843(b) Use of a Communication Facility to Facilitate the commission of a Federal Drug Felony.

   a. I am currently assigned to the Seattle Division Prohibited Mail Narcotics Team, which is responsible for the investigating of controlled substance law violations involving the United States Mails.

   b. Additionally, I attended a one week training course presented by the United States Postal Inspection Service addressing the current trends in controlled substance mailings. Part of my training as a Postal Inspector included controlled substance investigative techniques, chemical field testing, and the

training in the identification and detection of controlled substances being transported in the US Mail.

c. During my career I have participated in several drug interdictions, studying the various mailing characteristics of controlled substance traffickers for incoming and outgoing parcels.

2. Based on my experience, training and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when persons use the United States Mails to ship controlled substances from one location to another. Indicators for parcels that contain controlled substances include, but are not limited to the following:

a. It is a common practice for the shippers of controlled substances and proceeds of the sale of controlled substances to use Priority Mail because the drugs arrive faster and on a predictable date, and this system allows shippers to keep track of the shipment. With regards to Priority Mail parcels, shippers pay for the benefit of being able to confirm the delivery of the parcel by checking the U.S. Postal Service Internet Website and/or calling a toll free number.

b. These packages in many instances contain a fictitious return address, incomplete return address, no return address, the return address is same as the addressee address, or the return address does not match the place where the parcel was mailed from. These

packages are also sometimes addressed to or from a commercial mail receiving agency (i.e., UPS Store). These address practices are used by narcotics traffickers to hide the true identity of the person(s) shipping and/or receiving the controlled substances from law enforcement officials.

c. In order to conceal the distinctive smell of controlled substances from narcotic detector dogs, these packages tend to be wrapped excessively in bubble-pack and wrapping plastic, and are sometimes sealed with the use of tape around all the seams. Also, the parcels often contain other parcels which are carefully sealed to prevent the escape of odors. Sometimes perfumes, coffee, dryer sheets, tobacco or other smelling substances are used to mask the odor of the controlled substances being shipped.

d. When the shipper mails controlled substances from a particular area/state, the proceeds from the sale of these controlled substances may be returned to the shipper. Based on experience and discussions, there are known source states, where controlled substances are mailed from, including California, Oregon, Washington, Arizona and Texas.

e. I know from training and discussions with other law enforcement officers that the following controlled substances are likely to be found during parcel interdictions: marijuana, methamphetamine, cocaine, LSD, psilocybin mushrooms, heroin, opium, and MDMA.

3. In this warrant application, I seek this Court's authority to search Priority Mail parcel 9405 5096 9993 9266 0773 20, which is described in greater detail below, for controlled substances in violation of Title 21 U.S.C. Sections 841(a)(1) and 843(b) and Title 18 U.S.C. Section 1716.

**RELEVANT FACTS PERTAINING TO PRORITY MAIL PARCEL 9405 5096 9993 9266 0773 20**

4. On September 21, 2013, Postal Inspectors were contacted by postal management regarding Priority Mail parcel 9405 5096 9993 9266 0773 20, hereinafter referred to as the SUBJECT PARCEL, because of a parcel watch for the address 1709 Halibut Point Road #21 in Sitka, AK and any parcel being delivered to Nik Peterson. The parcel watch was requested by Sitka Police Department (SPD) as a result of criminal intelligence investigators received concerning the address and the recipient of the SUBJECT PARCEL being involved in drug distribution in Sitka, AK. The subject parcel is being shipped from Watsonville, CA to Sitka, AK 99835.

5. The parcel is addressed to "Nik Peterson, 1709 H.p.r #21, Sitka, AK 99835" from "Mariana Garcia, 156 6th St., Watsonville, CA 95076" A photocopy of the label of the subject parcel is attached as **Exhibit 1**.

6. The sender's name and address listed on the SUBJECT PARCEL was researched utilizing United States Postal Service (USPS) and law

enforcement databases. According to Accurint, a law enforcement database "156 6th St., Watsonville, CA 95076" is a deliverable address and "Mariana Garcia" does associate to the address. The data provided by Accurint is a combination of over 33 billion records from over 8,800 different data sources which are updated daily, weekly, monthly, and annually, depending on the particular data source.

7. The receiving address "Nik Peterson, 1709 H.p.r #21, Sitka, AK 99835"is a deliverable address and "Nik Peterson" does associate with the address but only as recently as June 2013. More recently "Nik Peterson" connects to P.O. Box address 6286 from February of 2003 to August 2013. Additionally, SPD provided information from utility records the recipient of the SUBJECT PARCEL has an active account at 402 Degroff Street, Sitka, AK 99835 and resides at that address.

8. Additionally, in 2009 through 2010 a reliable criminal informant for SPD made successful controlled buys on several occasions of oxycontin from the receiver of the SUBJECT PARCEL, Nik Peterson. Furthermore, in approximately January of 2013 as part of an accidental death investigation SPD investigators interviewed Nik Peterson regarding his possible involvement of a death of a family member. During the interview he admitted to investigators to being an opiate user.

9. Currently there is no narcotics trained K9 available in Juneau, AK. Due to the unavailability of a narcotics trained K9 the SUBJECT PARCEL was sent to Seattle, WA for a K9 "sniff". On September 24, 2013, Task Forcer

Officer (TFO) Cory Stairs applied narcotics detecting dog "Caro" to the SUBJECT PARCEL. TFO Stairs observed Caro alert, indicating to the positive odor of narcotics emitting from the SUBJECT PARCEL. TFO Stairs' affidavit is attached as **Exhibit 2.**

10. This parcel contains the following characteristics used by drug traffickers to prevent the detection of drugs being shipped through the mail:

    a. Heavily tapped box.

    b. Mailed from a source state, California.

11. The subject parcel is currently in my custody of the United States Postal Service at the Mendenhall Post Office, 9491 Vintage Blvd, Juneau, AK 99801 and is in its original sealed and intact condition.

12. Based on my training and experience as a Postal Inspector and the aforementioned factors, your affiant believes there is probable cause to believe that the subject package contains controlled substances, and/or other evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 843(b), and Title 18, United States Code, Section 1716

FURTHER AFFIANT SAYETH NAUGHT.

Signature Redacted

Brett A. Willyerd
Postal Inspector

Subscribed and sworn to
Before me, this 26th day of
September 2013.

Signature Redacted

U.S. MAGISTRATE JUDGE



PRIORITY®
MAIL
UNITED STATES POSTAL SERVICE

Medium Flat Rate Box

Visit us at usps.com

Print Shipping labels

UNITED STATES POSTAL SERVICE

a preferred shipping service on ebay

P

09/17/2013
From 95076

US POSTAGE PAID
Pitney Bowes
ComBasPrice
Medium FR Box
024P0007629856

PRIORITY MAIL 3-DAY™

MARIANA GARCIA
156 6TH ST
WATSONVILLE CA 95076

Fud?

NMR 8 9/21/13

0004

NIK PETERSON
1709 H.p.r. #21
Sitka AK 99835

USPS TRACKING #

9405 5096 9993 9266 0773 20

7/13

The safer, easier way to pay PayPal

**DEA HIDTA Task Force Group D-22**
**Valley narcotics Enforcement Team**

**Case No. GFRE-13-9227**

Task Force Officer Cory Stairs
September 24, 2013

---

DETAILS

On September 24, 2013, I was contacted by the US Postal Inspection Service and requested to use my narcotics detection canine to conduct a "Sniff" of a parcel believed to contain narcotics.

This particular "subject" parcel was intended to be delivered to Sitka, AK and listed a tracking number of 9005 5096 9993 9266 0773 20.

Inspector nelson Rivera placed the "subject" parcel in office room out of view of "Caro" and me. I used "Caro" to conduct a sniff several adjacent rooms and before allowing my canine to conduct sniff the room where the "subject" parcel was hidden. Caro 'sniffed" the contents of the room and when he came to the "subject" parcel, which was hidden under an empty box, I observed Caro's breathing slow and place his nose directly on the box containing "subject" parcel and sit. When "Caro" sits, it is an indication to me that he could smell the odor of narcotics.

Caro was rewarded with a ball and concluded the search.

TRAINING/EXPERIENCE

I am a commissioned Police Officer for the Port of Seattle Police Department, and have been employed since October 7, 2000. I am currently assigned as a Task Force Officer of the United States Drug Enforcement Administration (DEA), as an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18. My duties include investigating federal and state narcotics violations within the jurisdiction of the Port of Seattle, the County of King, State of Washington, and the United States.

I am a graduate of the Basic Police Academy provided by Washington State Criminal Justice Training Commission. I have received over 200 hours of classroom training including but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances. I have completed the two week basic narcotics investigations course with the Drug Enforcement Administration and I have received nationally recognized narcotics training provided by the International Narcotics Interdiction Association (INIA) as well as the California Narcotics Officers Association (CNOA).

By virtue of my assignment with the DEA, I am authorized to conduct investigations into violations of the Controlled Substances Act. In doing so, I have conducted a variety of investigations into violations ranging from simple possession of narcotics to complex international conspiracies. Because of this experience and training, I am familiar with common methods of investigating drug trafficking organizations, and have become familiar with the methods of operation of drug traffickers, including, but not limited to, their methods of importing, exporting, storing, concealing, and packaging drugs; their methods of transferring and distributing drugs;

their use of cellular telephones, telephone pagers, emails, and other electronic means of communication to further their narcotics trafficking activities; and their use of numerical codes, code words, counter-surveillance, and other methods of avoiding detection by law enforcement. I am also familiar with the various methods of packaging, delivering, transferring, laundering, and expatriating drug proceeds.

I have participated in the execution of numerous narcotics search warrants. Most commonly, these warrants authorize the search of locations ranging from the residences of drug traffickers and their coconspirator/associates, to locations used to manufacture, distribute and hide narcotics and drug proceeds. Materials searched for and often recovered in these locations include packaging materials, manufacturing items, scales, weapons, documents and papers reflecting the distribution of controlled substances and the identity of coconspirator associates, and papers evidencing the receipt, investment, and concealment of proceeds derived from the distribution of controlled substances.

CANINE QUALIFICATIONS

I'm currently assigned to the DEA HIDTA Taskforce and handle a narcotics canine as a collateral duty. In November 2010, I completed the state mandated requirement of 200 hours of canine narcotics specific training and met the canine performance standards set by the Washington Administrative Code (W.A.C.) 139-05-915 for the Narcotic Dog Handler (General Detection). My training consists of over 300 hours of training in the classroom as well as practical applications, which covered all areas specified by W.A.C.

On November 14, 2010 Canine "Caro" and I were certified as a team by the Washington State Police Canine Association. The WSPCA is an organization with voluntary membership to improve training and effectiveness of canine teams statewide. The WSPCA certification is also voluntary with more stringent standards than the state requirement. The substances trained on by the team are cocaine, heroin, methamphetamine and marijuana/hashish.

On May 17, 2013, Canine “Caro” and I were again certified as a team by the Pacific Northwest Police Detection Dog Association. PNPDDA is also an organization with voluntary membership to improve training and effectiveness of canine teams working in the Pacific Northwest. The PNPDDA certification is also voluntary with more stringent standards than the state requirement. The substances trained on by the team are cocaine, heroin, methamphetamine and marijuana.

Caro is a passive alert canine. “Caro” is trained to give a "sit response" after having located the specific location the narcotics odor is emitting from. The handler is trained to recognize the changes of behavior the canine exhibits when it begins to detect the odor of narcotics. The odor can be emitting from the controlled substance itself, or it can be absorbed into items such as currency, clothing, containers, packaging material, etc. Narcotic smelling canines such as “Caro” have an inherently keen sense of smell, and will continue to alert on the container or item depending on the length of exposure to the controlled substance, and the amount of ventilation the item is exposed to.

Caro’s reward for finding narcotics / narcotic related items is a rubber ball. Caro and I continue to train on a regular basis to maintain our proficiency as a team.
On-going training includes:

- Training in all areas of interdiction, such as vehicles, boats, truck tractor and trailers, schools, currency, parcels and mail, airports and airplanes, bus and bus depots, storage units, residences, trains and train depots, prisons, motels, apartments, etc.
- Training on various quantities of controlled substances, ranging from grams to ounces, and pounds when available.

- Training on novel odors, such as odors that are distracting, masking, or new.
- Training on controlled negative (blank) testing, in which all objects or locations have no contraband present.
- Training in "Double Blind" scenarios
- Extinction training, which proofs the dog and prevents him from alerting to common items associated with controlled substances, such as plastic bags, etc.

I maintain both training logs and field activity/application reports. Both are available for review upon request. At this time the team has found over 953 narcotics substance training aids and 109 applications in the field resulting in the seizure of narcotics and currency. Canine "Caro" maintains approximately a 92 percent rate of accuracy in field applications.

Canine Caro was trained and certified prior to the effective date of Initiative 502. Canine Caro is trained to detect the presence of marijuana, heroin, methamphetamine, and cocaine. Canine Caro cannot communicate which of these substances he has detected. Canine Caro can detect minuscule amounts of these four substances. Canine Caro cannot communicate whether the detected substance is present as residue or in measurable amounts. Despite these limitations, canine Caro's alert provides probable cause to believe that evidence of a Violation of a Uniform Controlled Substance Act may be found where the canine provides a positive alert for the odor of controlled substances.

I certify or swear under the penalty of perjury the foregoing statement is true and correct.

Detective Cory W. Stairs
DEA Task Force
Badge #10253
September 24, 2013